IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PATSY F. KNIGHT,                              )
                                             )
        Plaintiff,                           )
                                             )
v.                                           )        Case No. 3:05cv0797
                                             )
UNITED STATES COLD STORAGE, INC.,            )        Judge Thomas A. Wiseman, Jr.
                                             )
        Defendant.                           )

## MEMORANDUM OPINION

Before the Court is the Motion for Summary Judgment (Doc. No. 19) filed by Defendant United

States Cold Storage, Inc. ("Cold Storage").   The motion has been fully briefed and is ripe for

consideration.  For the reasons discussed below, the Court will grant the motion.

## I.      INTRODUCTION

Plaintiff Patsy F. Knight has filed a second amended complaint in which she sets forth claims

under Title VII of the Civil Rights Act of 1964 ("Title VII") and/or the Tennessee Human Rights Act

("THRA") for sexual harassment/hostile work environment and retaliatory discharge.  The parties have

conducted discovery and Cold Storage has now filed its summary judgment motion seeking dismissal

of both claims.  In its supporting Memorandum of Law, Cold Storage argues that Knight lacks evidence

to support a *prima facie* case either for her claim of sexual harassment or for retaliation in violation of

either Title VII or the THRA.  In addition, Cold Storage argues that even if Knight had sufficient proof

to make out a *prima facie* case for either cause of action, Cold Storage has proffered legitimate, non-

discriminatory reasons for its employment actions affecting Knight, and Knight has not offered any

evidence to demonstrate that Cold Storage's proffered reasons are pretextual or that Cold Storage's

actions were actually motivated even in part by unlawful discrimination or an intent to retaliate.

In her response in opposition to Cold Storage's motion (Doc. No. 20), Knight does not touch

upon the elements of her *prima facie* case.  Instead, she simply argues that "where . . . the outcome

hinges in whole or in part on state of mind, intent, or witness credibility, summary judgment should not

be granted." (Doc. No. 24, at 3.)  Knight argues that the supervisor who terminated her employment, Marlon

Lucas, claims that he did so because Knight had made fourteen work-related errors in one year. Knight argues that Lucas's motive in terminating her and his credibility are jury issues such that summary judgment is not warranted. Knight further argues that proximate cause and the reasonableness of Knight's reaction to perceived harassing behavior are fact questions for the jury.

Despite Knight's complete failure actually to address the issues raised in Cold Storage's motion or to make reference to the legal standards applicable in discrimination and retaliation cases, the Court has considered the merits of Cold Storage motion, viewing the facts (presented by Cold Storage) in the light most favorable to the plaintiff. As set forth below, the Court finds that Knight has failed to set forth a *prima facie* case either for sexual harassment/hostile work environment or retaliation.

## II.      STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party). In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 460 (6th Cir. 2001). Justifiable inferences based on facts are also to be drawn in favor of the non-movant. *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.' " *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Liberty Lobby*, 477 U.S. 242, 249).

## III.      FACTUAL BACKGROUND

Cold Storage is a refrigerator/freezer warehouse company, whose customers use Cold Storage's warehouse facility to store perishable food products on a short-term basis. Patsy Knight was hired as a full-

time regular employee on February 16, 2004.[1] She worked for Cold Storage as a dock clerk from her hire date until her termination in June 2005. As a dock clerk, Knight reported to Gary Hallum, Supervisor. Above Hallum, Knight reported to Larry Hall, Superintendent, and Marlon Lucas, Facility Manager/Vice President.

According to Cold Storage, its began receiving reports of problems with Knight's performance shortly after her initial training period ended. After a "grace period" of several months, Cold Storage began documenting Knight's errors. There is no dispute Knight received her first documented disciplinary warning on or about July 8, 2004. (*See* March 3, 2006 Deposition of Patsy Knight ("Pl. Dep."), Ex. 5.) On April 15, 2005, less than ten months later, Knight received her twelfth documented warning.[2] Gary Hallum or Larry Hall issued each of these warnings. After the twelfth warning, Marlon Lucas made the decision to suspend Knight for three days, and she was advised not to make any further errors.

In June 2005, Knight made two more errors for which she was written up. Knight does not deny that she was written up for making these errors, but she contends that other employees were at fault for the mistakes for which she was blamed. Marlon Lucas made the decision to terminate Knight's employment because she had made fourteen work-related errors in less than one year. Knight does not deny that Marlon Lucas made the decision to terminate her; in fact, she conceded that he "probably had the biggest part of it." (Pl.'s Dep. at 148:10–14.) However, she contends that he should have investigated further and not fired her, because the errors for which she was fired were not her responsibility. (Pl.'s Dep. at 149:3–9.)

In March 2004, several months before Knight's first error was documented and more than a year before she was terminated, Cold Storage investigated Knight's allegation of sexual harassment by her co-worker, Terrell Massengill. In her response to Defendant's statement of undisputed facts, Knight admits that Massengill was an administrative employee and not her supervisor, but maintains that this fact is not material.

---

[1] Knight worked for Cold Storage through a temporary staffing service, Spherion, from November 2003 through February 2004. As a Spherion employee, she worked in the warehouse as a forklift operator. She did not work in the dock office.

[2] Knight admits she received twelve warnings but denies that this fact is "material" for purposes of Rule 56, Fed. R. Civ. P. (*See* Pl.'s Resp. to Def.'s Statement of Undisputed Facts (hereafter referenced as "Doc. No. 25") ¶ 2.) The matters for which Knight was typically "written up" included such matters as failing to account properly for pallets sent out with a shipment; failing to catch a discrepancy between the product Cold Storage actually received from a customer and what the paperwork indicated it received; pre-signing a driver's paperwork, i.e., signing paperwork before the driver actually picks up the load to which it pertains; and so forth. (*See* Exhibits to Pl. Dep.)

(Doc. No. 25 ¶ 6.) Knight also acknowledges that Lucas confronted Massengill with Knight's allegations, disciplined him, instructed him to abide by Cold Storage's sexual harassment policy, and specifically told him he would be terminated if he failed to do so. Lucas then caused Massengill's work station to be moved out of the dock office where Knight worked and told him to refrain from interacting with Knight unless business required him to do so. Although Knight alleged in her deposition that Massengill continued to "harass" her over the following six months by touching her inappropriately and intentionally brushing up against her when he passed her, she admits she never complained to Lucas or Hall about any further alleged sexual harassment by Massengill.

In November 2004, Knight reported to Hall that Willie Young, another co-worker, had "made an inappropriate comment to her," but she did not provide any specific details regarding what Young allegedly said. (Doc. No. 25 ¶ 10 (admitting this fact but stating it is "not 'material' within the meaning of Rule 56").) In her deposition, Knight testified that Young called her a "stupid blonde" five or six times (Pl. Dep. 59:1–5), and that she reported as much to Hall and Hallum (Pl. Dep. at 60:23 – 61:1). Regardless, Knight was requested to, but did not, provide a written statement about the alleged inappropriate comment. (Pl. Dep. at 79:4–17.) Despite Knight's failure to follow up with a written statement, Hall investigated the report and confronted Young. Hall told Young to avoid any unnecessary contact with Knight. Hall also questioned other employees, who told him only that Young and Knight apparently had a personality conflict and frequently argued about work-related issues. (Oct. 11, 2006 Declaration of Larry Hall ("Hall Decl.") ¶¶ 32, 33.) Because Knight never documented her complaints or followed up on her verbal complaint, and because Hall's investigation did not indicate any wrongdoing by Young, Cold Storage did not pursue the matter any further.

At some point, though the time frame is not made clear in any of the parties' filings, Knight also reported to Gary Hallum that Wilbur Bishop, an African-American male co-worker, was "acting crazy," and she complained generally about the way Bishop was treating the "guys on the floor," that is, the warehouse employees. Cold Storage received reports from other employees as well that Bishop said inappropriate things to both women and men, black and white, and that he generally had an abrasive personality. Cold Storage has presented testimony to the effect that Bishop was counseled regarding his behavior, and was demoted and ultimately terminated. Knight denies these allegations, based on her observation that Bishop's

inappropriate conduct continued. (Pl. Dep. at 80:21–25.) She admitted, however, that she had no actual knowledge regarding whether Bishop was demoted or terminated. (*See* Pl. Dep. at 67:9–12.)

With respect to her retaliation claim, Ms. Knight testified in her deposition that her supervisors retaliated against her, not because she complained about sexual harassment, but because she complained about how Bishop "treated the guys" in the warehouse. (Pl. Dep. at 82:25–83:20; *see also* Doc. No. 25 ¶ 15 (admitting allegation but denying it is "material" under Rule 56).) When asked during her deposition in what way Cold Storage retaliated against her, Knight identified four actions: (1) she was told by a fellow employee that he had overheard Larry Hall tell Gary Hallum that Knight talked too much and he was gong to find a way "to see that [she was] out of there" (Pl. Dep. at 82:6–13); (2) Larry Hall acted as though he was mad at her, or "aggravated with the fact" that Knight kept complaining about how Bishop was "treating the guys" (Pl. Dep. at 82:14–24); (3) when Knight complained again, this time about Bishop's behavior toward a specific male employee, Hall was short with her and basically hung up the phone on her (Pl. Dep. at 83:3–9); and (4) Gary Hall added information to Knight's disciplinary write-ups after Knight signed them, without Knight's knowledge (Pl. Dep. at 85:8–17). Although Knight failed actually to identify the termination of her employment as a retaliatory action, the Court, giving Plaintiff the benefit of the doubt, will assume that this omission was an oversight.

## IV. DISCUSSION

Cold Storage asserts that it is entitled to summary judgment of the sexual harassment/hostile work environment claim on the basis that (1) the alleged harassment by Young and Bishop was not sexual in nature; (2) the behavior of which Knight complains does not rise to the level of severe or pervasive harassment sufficient to state a claim for sexual harassment; and (3) Knight cannot establish employer liability for the alleged harassment. Likewise, Cold Storage argues that Knight's retaliation claim is subject to summary judgment because (1) the actions by the employer about which Knight complains were not likely to deter a reasonable employee from exercising her rights under Title VII; (2) Knight has admitted that the supposedly retaliatory actions she complains about were not actually the result of her internal complaints of sexual harassment, but were related to her complaints about how one black male employee was treating other male employees, black and white; and (3) Knight cannot establish that Cold Storage's proffered legitimate,

non-discriminatory reasons for its actions were pretext for unlawful retaliation. As indicated above, Knight argues only that her supervisor's subjective motive in deciding to terminate her employment is a jury question, and that causation is likewise a jury question.

### A. Sexual Harassment/Hostile Work Environment Claim

#### 1. Prima Facie *Case of Sexual Harassment*

Knight brings her sexual harassment claim under Title VII and the THRA. To establish a *prima facie* case of sexual harassment under either statute, Plaintiff must prove: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status, *i.e.*, race or sex; (4) the harassment created a hostile work environment; and (5) the employer is vicariously liable for the harassment. *Clark v. United Postal Service, Inc.*, 400 F.3d 341, 347 (6th Cir. 2005); *Parker v. Warren County Util. Dist.*, 2 S.W.3d 170, 172–73 (Tenn. 1999) (noting that the Tennessee legislature intended the THRA to be coextensive with federal law, quoting *Carr v. United Parcel Serv.*, 955 S.W.2d 832, 834–35 (Tenn. 1997)).

There is no dispute that Plaintiff, as a woman, is a member of a protected class. In addition, viewing the facts in the light most favorable to Knight, there is a disputed fact as to whether she was subject to unwelcome harassment because of her sex by Terrell Massengill, Willie Young and Wilbur Bishop.[3] At issue then is (1) whether Knight has presented sufficient evidence from which a jury might conclude that the alleged harassment was sufficiently egregious to create a hostile work environment and (2) if so, whether Cold Storage can be vicariously liable for it.

#### 2. *Whether the Alleged Harassment Created a Hostile Work Environment*

Regarding the fourth element of the *prima facie* case, the Supreme Court has stated that a hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21

---

[3]Cold Storage argues that the alleged harassment by Young and Bishop was not "based on" Knight's sex. In her deposition, Knight alleged that both Young and Bishop referred to her a number of times as a "stupid blonde." Although the evidence is not strong, the Court finds at this stage in the proceedings that Knight has created an issue of fact as to whether the harassment by Young and Bishop was based on her sex. There is no dispute that Massengill's alleged harassment was sexual in nature.

(1993) (internal quotation marks and citation omitted). Both an objective and subjective test must be met; in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim. *Id.* at 21–22.

Courts determining whether the harassment was sufficiently severe and pervasive to create a hostile work environment must consider the totality of the circumstances, rather than each event complained of in isolation. *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997). Factors to be considered include the "frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Harris*, 510 U.S. at 23. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citation omitted), *quoted in Randolph v. Ohio Dept. of Youth Services*, 453 F.3d 724, 733 (6th Cir. 2006).

Cold Storage argues that the allegations of harassment by Young and Bishop were isolated events that do not rise to the level of severe or pervasive harassment necessary to establish a hostile work environment claim. (*See* Doc. No. 20, at 15 n.36.) The Sixth Circuit has made it clear, however, that "all allegations of harassment must be considered [together] when determining whether the harassment created a hostile work environment. Each incident of harassment contributes to the context in which every other incident occurs; the totality-of-the- circumstances test set forth in *Harris* requires consideration of all incidents, regardless of the perpetrator, when determining the existence of a hostile work environment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 563 n.4 (6th Cir. 1999). Thus, the Court must consider all the alleged incidents of harassment, by Massengill, Young and Bishop, to determine whether Knight has raised an issue of fact as to whether the harassment was severe enough to create a hostile work environment.

Knight complains that, in the aggregate, Massengill made several sexual comments to her (for which he was disciplined), and then went out of his way to brush against her breasts or butt approximately ten times over a five-to six month period (from July through December 2004). She only

had a specific recollection of three of these instances, however. In addition, over the approximately year and a half that Plaintiff worked for Defendant, Young allegedly called her a "stupid blonde" five or six times, and Bishop allegedly called her a "stupid blonde" three or four times.

Knight does not claim, however, that any of the alleged harassing behavior interfered with her work performance or made it more difficult for her to do her job.[4] The Supreme Court has stated that our "inquiry should center, dominantly, on whether the discriminatory conduct has unreasonably interfered with the plaintiff's work performance." *Harris*, 510 U.S. at 25 (Ginsburg, J. concurring). The Sixth Circuit has further clarified that "the focus of the objective/subjective inquiry should remain on (1) whether a reasonable person would find the environment objectively hostile, and (2) whether the plaintiff subjectively found the conduct "severe or pervasive." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 567–68 (6th Cir. 1999).

In this case, "all of the circumstances taken together are not sufficient to permit a rational trier of fact to conclude that a reasonable person would find the harassment was sufficiently severe or pervasive to alter the conditions of employment and create a hostile or abusive working environment." *Curry v. Nestle USA, Inc.*, 2000 WL 1091490, at *5 (6th Cir. July 7, 2000); *see also Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997) (offensive comments not directed toward the plaintiff were not sufficient to create an objectively hostile work environment in violation of Title VII); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995) (cited with approval in *Black*, finding that nine allegedly harassing incidents, spread over seven months, could not reasonably be thought to create a hostile work environment under Title VII). The present case is clearly distinguishable from those in which the Sixth Circuit has found a material issue of fact as to the existence of a hostile work environment. *See, e.g.*, *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998) (finding a material issue of

---

[4]Knight testified that Bishop also belittled her in front of other people on occasion and generally treated her disrespectfully. Knight's testimony also makes it clear, however, that Bishop's conduct in that regard was not related to her sex: He treated everyone, men and women, equally disrespectfully. (*See* Pl. Dep. at 66:3–20 (acknowledging that Bishop had a "very hostile personality," that he was "hostile toward men and women," "belittles men and women," and said "demeaning things to men as well as women").) Thus, although Knight claims she called Larry Hall several times to get him to "stop [Bishop] from trying to do my job" (Pl. Dep. at 65:10–13), it is clear that the Bishop's behavior toward her, to the extent it had any impact on Knight's ability to do her job, was not "based on sex."

fact as to hostile work environment where a supervisor's sexual comments were "commonplace," "ongoing," and "continuing " over a period of seven years where the plaintiff worked with the supervisor on a daily basis); *Williams v. Gen. Motors Corp.*, 187 F.3d 553 (6th Cir. 1999) (plaintiff created an issue of fact as to hostile work environment, because her complaints of foul and offensive language in the workplace, mean and annoying treatment by coworkers, perceived inequities of treatment and sexually related remarks by a supervisor directed toward the plaintiff had to be considered in the aggregate).

The Court's finding that Knight has failed to establish the existence of an objectively hostile work environment is sufficient to warrant summary judgment in favor of the defendant on this claim. As set forth below, however, the Court also finds that even if Knight were able to create a material issue of fact as to whether the alleged harassment created a hostile work environment, Knight has not shown that Cold Storage could be vicariously liable for the alleged harassment.

### 3. Whether the Employer Can Be Liable

In order to establish the fifth prong of her *prima facie* case, employer liability, Knight must demonstrate that Cold Storage either knew or should have known about the harassing conduct but failed to take any corrective or preventative actions. *Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 604–05 (6th Cir. 2002). If the harassment is conducted by a supervisor rather than by a co-worker, then

> the employer's liability turns on whether the harassment results in a tangible employment action: If proven sexual harassment by the supervisor did not result in a tangible employment action, then the employer may not be liable if it engaged in preventative or corrective measures and the plaintiff unreasonably failed to utilize the measures the employer provided.

*Keeton v. Flying J., Inc.*, 429 F.3d 259, 262 (6th Cir. 2005) (citations omitted). The Sixth Circuit has further stated that the terms "tangible employment action" and "adverse employment action" are equivalent. *Id.* at 263 n.1.

### (a) Cold Storage Is Not Vicariously Liable for Massengill's Harassing Behavior.

Plaintiff alleged in her deposition that Massengill was a supervisor. The implication is that Cold Storage would be subject to the more stringent level of responsibility for his behavior. In her response to Cold Storage's statement of undisputed facts, however, Knight admitted that Massengill was an

"administrative employee" rather than a supervisor, though she also contends that this fact is not "material" for Rule 56 purposes. (Pl.'s Resp. to SUF ¶ 6.) Knight, in fact, has not presented any evidence that Massengill was in a supervisory position other than her own unsubstantiated deposition testimony that she believed Massengill was a "supervisor" at the beginning of her tenure as a dock clerk. (Pl. Dep. at 40:4–13.) In addition, Knight conceded that she did not know what Massengill's responsibilities actually were at that time (Pl. Dep. at 40:14–17), and she knew that the persons with authority to take disciplinary action, hire and fire, and give raises and promotions were Larry Hall and Marlin Lucas. (Pl. Dep. at 41–42.) Cold Storage, on the other hand, has presented evidence to the effect that Massengill was demoted from a supervisory position in January 2004, just before Plaintiff became a permanent employee, and that he was employed thereafter in a strictly administrative position.

In other words, Knight has failed to create a material issue of fact as to whether Massengill was her supervisor during the time when he was allegedly harassing her. Regardless, even assuming Massengill was in a supervisory position, there is no dispute that Massengill's alleged harassment did not result in any tangible employment action against Knight. Moreover, after Knight reported harassment by Massengill to her supervisors, Cold Storage took several concrete steps to correct the problem and prevent it from recurring. First, Cold Storage conducted an investigation into Knight's allegations: Marlon Lucas interviewed Knight as well as other female employees who worked with Massengill, and he confronted Massengill with Knight's allegations. Next, Lucas issued a formal disciplinary warning to Massengill, which was placed in Massengill's personnel file. Lucas informed Massengill he was expected to abide by Cold Storage's sexual harassment policy and would be terminated if he failed to do so. Finally, Massengill's work station was moved out of the dock office to the warehouse to limit any further interaction between Massengill and Knight, and Massengill was told to refrain from interacting with Plaintiff unless business required it.

Besides these actions, Marlon Lucas had a follow-up meeting with Knight to explain to her the steps that had been taken in response to her complaint. According to Knight, Lucas told her he had "taken care of the problem" and she should not have further problems with Massengill. (Pl. Dep. at

75:6–14.)   Knight did not express dissatisfaction with Cold Storage's reaction to her report; she assumed the matter had been taken care of.   In fact, Knight does not dispute that Cold Storage responded appropriately to Knight's report of harassment by Massengill.   Despite Cold Storage's prompt reaction to Knight's first allegations of harassment by Massengill, Knight herself unreasonably failed to report any further problems with Massengill, such that Cold Storage had no reason to know that Knight had experienced additional problems with him.   Cold Storage therefore cannot be vicariously liable for Massengill's harassment of Knight.

*(b)*      *Cold Storage Is Not Vicariously Liable for Young's Harassing Behavior.*

Knight claims she complained to Gary Hallum, her direct supervisor, that her co-worker Willie Young had called her a "stupid blonde" and told her she did not know how to do her job.  (Pl. Dep. at 78:10–19.)   Hallum allegedly told her he would "take care of the problem."   (Pl. Dep. at 78:19–20.) Larry Hall later asked her to put a statement in writing about Young, which Plaintiff never did.  (Pl. Dep. at 79: 4–17.)   Knight testified that she believed Hallum never spoke to Young because the problem "kept on going" (Pl. Dep. at 80:7–9), but she also admitted she had no actual knowledge one way or the other about whether Hallum or Hall spoke with Young or with other employees about the alleged harassment.

According to Larry Hall, Cold Storage's management was aware that Knight and Young had "issues" working together, but Knight never reported that Young sexually harassed her.  Young reported to Hall several times that Knight was "overstepp[ing] her authority" and "ma[king] decisions [Young] was supposed to make."   (Larry Hall Decl. ¶ 32.)   Hall spoke with Knight informally about Young's complaints but the situation did not improve.   He spoke with other employees who confirmed Young's version of the story.   On November 19, 2004, Hall gave Knight a written warning for overstepping her authority and making decisions that Young should have been making.   (Larry Hall Decl. ¶ 32; Pl. Dep. Ex. 2.)   According to Hall, Young and Knight argued over the issue of authority, and Young complained to Hall, and specifically complained that Knight had stated "I'm going to nail his ass to the wall" after they had had an argument about their work duties.   Knight does not deny making this statement but denies that it was directed toward Young.  (Pl. Dep. at 47:18–25.)

Hall alleges that it was after he gave Knight her written reprimand that Knight complained to him that Young had made an "inappropriate comment" to her, but she never said what the comment was. Hall's and Knight's versions of events are consistent insofar as both agree that Hall asked her to write down what Young had said so that the company could investigate it, but Knight never did so.

Even though Knight never provided a written statement or additional detail about what Young supposedly said, Hall confronted Young, who denied making any inappropriate statement toward Knight. Hall also asked other employees on Knight's shift whether they had witnessed anything inappropriate between Young and Knight. No one had, though several indicated they knew Young and Knight did not get along well and argued frequently over work-related issues. Despite having no factual information regarding what Young allegedly said to Knight, Hall directed Young to stay away from Knight unless he needed to talk to her about work issues.

Because this is a motion for summary judgment, all the facts must be construed in the light most favorable to Knight and any credibility determinations must be resolved in her favor. Under this standard, even assuming Knight reported verbally to Hall that Young had called her a "stupid blonde" and said something else "inappropriate" to her, there is no dispute that she failed to follow up with a written report, nor did she ever indicate to her supervisors that her problems with Young were based on her sex as opposed to being simply a personality conflict and a power struggle. The undisputed facts are these: Despite Knight's failure to put her complaints in writing and the absence of any corroborating evidence that Young was "harassing" her, Cold Storage's management attempted to conduct an investigation and told Young to stay away from Knight as much as feasible. Given the paucity of evidence suggesting sexual harassment by Young, Cold Storage's response to Knight's complaint was clearly reasonable. Thus, there are no facts from which a reasonable jury could conclude that Cold Storage knew or should have known about harassment of Knight by Young but failed to take reasonable steps to prevent or correct the situation. Cold Storage cannot be vicariously liable for any alleged harassment by Young.

> (b)      *Cold Storage Is Not Vicariously Liable for Bishop's Harassing Behavior.*

With respect to Bishop, Knight admits that his only "harassing" behavior toward her was to call

her a "stupid blonde" three or four times. (Pl. Dep. at 67:1–5.) She further testified that Bishop would intimidate her and try to do her job, but she also admitted Bishop had a "very hostile personality," and he demeaned and intimidated both women and men. (Pl. Dep. at 66:3–9.) Knight complained to Hall and Hallum that Bishop would not let her do her job, that "you can't get Bishop out of the office." (Pl. Dep. at 65:18–20.) Knight testified that she believed Hall and Hallum did not initially speak to Bishop after she first complained because the problems continued, but admitted she had no actual knowledge of whether either of them did or did not speak to Bishop. Regardless, Knight complained again to Hallum, this time telling him, not that Bishop was harassing her, but that he was "acting crazy again." (Pl. Dep. at 81:17–18.) Hallum told Knight "not to worry about it; he'll take care of it." (Pl. Dep. at 81:18–19.) Knight complained to Hallum a third time about how Bishop was "treating the guys," and specifically about his treatment of Chop Both, another employee who, like Bishop, was a black male. (Knight is white.)

According to Cold Storage's witnesses, Knight never told them that Bishop had called her a "stupid blonde," though there is no dispute that Knight did complain about how Bishop interacted with the other employees generally. In addition, other employees, both male and female, had also complained about Bishop's behavior. As a result of all these complaints, Bishop was demoted and subsequently terminated. Knight does not refute this evidence.

Regardless of whether Bishop's behavior toward Plaintiff could be characterized as sexual harassment, there is no dispute that Cold Storage responded to complaints about Bishop from a number of different employees and took disciplinary action against him as a result thereof. Knight has not presented any factual basis in support of holding Cold Storage liable for Bishop's alleged harassment.

### 4. *Plaintiff's Sexual Harassment Claim Fails.*

Knight has failed to produce evidence to create a disputed fact as to whether the alleged sexual harassment by Massengill, Young and Bishop, considered in the aggregate, was sufficiently severe and pervasive to create a hostile work environment. In addition, Knight has not established that Cold Storage could be vicariously liable for the alleged harassment. There is simply no evidence that the

alleged harassment resulted in any tangible employment action against Plaintiff, or that Cold Storage failed to respond appropriately to Knight's allegations of harassment. Because Knight has failed to establish a *prima facie* case of sexual harassment, the Court need not consider whether Cold Storage has articulated a legitimate, non-discriminatory reason for its employment actions that affected Knight, and Cold Storage is entitled to summary judgment in its favor on the sexual harassment claim.

### B. Plaintiff's Retaliation Claim

#### 1. Prima Facie *Case of Retaliation*

In the absence of direct evidence of a retaliatory motive for some employment action, a plaintiff may establish a *prima facie* case of retaliation, under either Title VII or the THRA, by showing that (1) she engaged in protected activity; (2) the exercise of protected rights was known to the defendant; (3) the defendant took material action that would dissuade a reasonable person from pursuing her rights under Title VII; and (4) a causal connection existed between the protected activity and the material action. *Burlington N. & Santa Fe Rwy. Co. v. White*, 126 S. Ct. 2405 (2006); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001); *see also Miller v. City of Murfreesboro*, 122 S.W.3d 766, 775 (Tenn. Ct. App. 2003) (listing the same elements and noting that the "THRA runs, essentially, a parallel course with Title VII") . If the plaintiff is able to make out a *prima facie* case of retaliation, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for it actions. *Gribcheck*, 245 F.3d at 551; *Miller*, 122 S.W.3d at 776. If the defendant articulates such a reason, the plaintiff then has the burden of proving the proffered reason for the defendant's actions was pretextual. *Gribcheck*, 245 F.3d at 552. In the case at bar, Knight's *prima facie* case fails for a variety of reasons.

#### 2. *Plaintiff Fails to Establish a* Prima Facie *Case of Retaliation.*

First, it is not entirely clear what actions Knight took that she contends constituted protected activity. For purposes of argument, it would seem that her complaints about Massengill's behavior would qualify as protected activity, and Cold Storage certainly knew about her reports. However, there is no evidence that Cold Storage took any action against Knight as a result of her complaints about Massengill that would have dissuaded her from exercising her rights under Title VII. In fact, Knight does not claim that the alleged retaliatory actions against her had anything to do with her report about

Massengill's inappropriate behavior.

With respect to the allegations of harassing behavior by Young and Bishop, Knight stated in her deposition that she "never had problems" working for Cold Storage until she started complaining about Bishop's treatment of Chop Both and the other "guys on the floor."  (Pl. Dep. at 83.)  In other words, according to Knight, the alleged retaliatory actions by Cold Storage took place as a result of Knight's complaints about how Bishop, a black male co-worker, was treating other male employees and, in particular, another black male employee.  In order for Knight's complaints about another employee's behavior to qualify as "protected activity," however, the other employee's conduct must be actionable under Title VII, or, at a minimum, the employee must reasonably believe it to be a violation of Title VII. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (the element of "protected activity" was not met where "no one could reasonably believe that the incident recounted violated Title VII"); *Bell v. Safety Grooving & Grinding*, No. 03-3902, 2004 WL 1922170, at *2–*3 (6th Cir. Aug. 24, 2004) (plaintiff's complaint about employer's business decision that was not alleged to be discriminatory did not constituted protected activity under Title VII).  Bishop's alleged mistreatment of other males, black and white, however egregious, by definition was not racially or sexually discriminatory, nor could Knight have reasonably believed otherwise.  Her report of his inappropriate behavior therefore could not qualify as activity protected by Title VII.

Notwithstanding, even if we assume, for purposes of argument, that Knight did engage in protected activity, the retaliatory activity of which she complains consists of: (1) a report from a co-worker that he had overheard Larry Hall tell Gary Hallum that Knight talked too much and he was going to find a way to get rid of her; (2) when Knight complained to Hall about how Bishop had treated Chop Both, Hall was short with her on the phone and basically hung up with her; (3) when Knight complained to Hall about how Bishop was treating other men "on the floor," Hall was again short with her and appeared dismissive of her allegations; (4) Gary Hall added information to Knight's disciplinary write-ups after Knight signed them; and (5) Knight's termination.  With the exception of Knight's termination, Cold Storage's alleged retaliation does not qualify as the type of "materially adverse" action that might "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination."  *Burlington*, 126 S. Ct. at 2415 (citations omitted).

Specifically, with respect to the alleged statement by Hall to Hallum, regardless of whether this hearsay is inadmissible, as Cold Storage argues, one supervisor's statement to another, which the plaintiff herself did not hear and was not intended to hear, was not actually a retaliatory *action* that affected the terms and conditions of her employment. At best, the hearsay might be evidence that a proffered reason for taking an adverse employment action is pretextual, but the issue of pretext would not become relevant until after the plaintiff established a *prima facie* case of retaliation. As for Knight's allegations about her supervisors' response to her complaints about Bishop, her supervisor's being short or curt with an employee, or acting annoyed, without more and particularly if it only occurred on two or three occasions, did not affect her employment status or cause her any tangible harm and thus would not qualify as a personnel decision at all, even a *de minimis* one. *Cf. Bowman v. Shawnee St. Univ.*, 220 F.3d 456 (6th Cir. 2000) (*de minimis* personnel decisions are not actionable); *Burlington*, 126 S. Ct. at 2415 ("The anti-retaliation provision protects an individual not from all retaliation but from retaliation that produces an injury or harm. . . . In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse. . . We speak of material adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth a general civility code for the American workplace." (citations omitted)). With respect to the information allegedly added to Knight's disciplinary reports after she signed them, Knight has not demonstrated that the additional information harmed her, affected the terms of her employment or that she even knew about the additional documentation until after her termination. This action could not qualify as "retaliatory" because, since Knight was not aware of it, it could not have deterred her from exercising her rights under Title VII. *Cf. Burlington*, 126 S. Ct. at 2415 (addressing what types of retaliation the anti-retaliation provision protects against).

The termination of Knight's employment would obviously qualify as a materially adverse employment action that might dissuade a reasonable employee from exercising her rights under Title VII. However, in addition to the fact that Knight's complaining about Bishop's treatment of other male employees was not actually protected activity, Knight has not presented one shred of evidence from which a jury could infer that the termination of her employment was in any way causally related to her complaints about Bishop (or Young, or Massengill). While temporal proximity might in some instances give rise to an inference of causation, *see,*

*e.g., Campbell v. Univ. of Akron*, No. 05-4528, 2006 WL 2986404, at * (6th Cir. Oct. 17, 2006), Knight has not presented any evidence as to when her termination occurred in relation to when she complained about Bishop.

Because Knight has failed to establish a *prima facie* case of retaliation, again the Court has no need to reach the question of whether Cold Storage has proffered legitimate, non-discriminatory reasons for its allegedly retaliatory actions. Cold Storage is entitled to summary judgment in its favor as to this claim as well.

**V.    CONCLUSION**

Plaintiff has failed to present sufficient evidence to establish a *prima facie* case either of sexual harassment/hostile work environment or retaliation under Title VII or the THRA. Defendant is entitled to dismissal of all claims asserted against it.

An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge